UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 06-656 SVW |
| | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| Plaintiff, | ) | MOTION TO STRIKE AND DISMISS |
| | ) | ALLEGATIONS OF VIOLATION OF 18 |
| v. | ) | U.S.C. § 659 [525] |
| | ) | |
| GEORGE TORRES-RAMOS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

I.  **INTRODUCTION**

Defendant Manuel Torres seeks to strike and dismiss Racketeering Act One, which is based on the allegation that Manuel Torres possessed stolen goods from interstate commerce in violation of 18 U.S.C. § 659. Manuel Torres argues that the Government cannot prove the required interstate commerce element.  Whether the goods were moving in interstate commerce at the time of their theft, however, depends on whether they had reached their final destination, which in turn depends in large part on the intent of the parties.  Because the parties'

1  intent is a question for the jury, Defendant's Motion to Strike and
2  Dismiss is DENIED.

3

4  **II.  ANALYSIS**

5

6      **A.  Receipt of Stolen Goods**

7

8      The Government proffers that it will present evidence at trial
9  that Manuel Torres received stolen meat products from an ABC Markets
10  truck.  The Government contends that the meat products originated at a
11  Farmer John "meat processing facility" in Phoenix, Arizona, and were
12  shipped to a Farmer John packaging plant in Vernon, California.
13  (Opp'n, at 3-4.)  From the Farmer John packaging plant in Vernon,
14  California, the meat products were then shipped to an ABC Markets
15  warehouse.  (Id. at 4.)  From the ABC Markets warehouse, the truck was
16  en route to a specific ABC store when it was stolen and then unloaded
17  by Manuel Torres at his residence in Los Angeles.  (Id.)

18      18 U.S.C. § 659 makes it a crime to buy or receive "any goods or
19  chattels moving as or which are a part of or which constitute an
20  interstate or foreign shipment of freight, express, or other property."
21  The statute further provides:

22          To establish the interstate or foreign commerce character of any
23          shipment . . . the waybill or other shipping document of such
24          shipment shall be prima facie evidence of the place from which and
25          to which such shipment was made.  For the purposes of this
26          section, goods and chattel shall be construed to be moving as an
27          interstate or foreign shipment at all points between the point of
28          origin and the final destination (as evidenced by the waybill or

1    other shipping document of the shipment), regardless of any

2    temporary stop while awaiting transshipment or otherwise.

3    Id.

4         The issue is whether the meat products had reached their final

5    destination, and had therefore lost their interstate character, at any

6    time before they were stolen.  As a rule, "an interstate shipment of

7    goods does not lose its characteristic as such until it arrives at its

8    final destination and is there delivered."  United States v. Petit, 841

9    F.2d 1546, 1551-52 (11th Cir. 1988); see also United States v. Skoczen,

10   405 F.3d 537, 544 (7th Cir. 2005); United States v. Garber, 626 F.2d

11   1144, 1147-48 (3d Cir. 1980); United States v. Yoppolo, 435 F.2d 625,

12   626 (6th Cir. 1970); Winer v. United States, 228 F.2d 944, 947 (6th

13   Cir. 1956).  Whether goods have arrived at their final destination

14   depends on "the relationship between the consignee, consignor, and

15   carrier, the indicia of interstate commerce at the time the theft

16   occurs, and the preservation of congressional intent."  Skoczen, 405

17   F.3d at 544 (quoting United States v. Petit, 841 F.2d at 1551); see

18   also United States v. Cousins, 427 F.2d 382, 385 (9th Cir. 1970) ("The

19   determination of whether a shipment is in interstate commerce at a

20   given time is essentially a practical one, depending upon the

21   relationship between the consignee, consignor, and carrier, and the

22   indicia of interstate commerce at the time the theft occurs, and the

23   preservation of congressional intent.").  No one factor is dispositive.

24   Skoczen, 405 F.3d at 544.

25        In Skoczen, the Seventh Circuit extended the scope of the

26   interstate commerce element to encompass a situation analogous to the

27   one here.  Id.  The government's undercover agent arranged a

28   transaction whereby the defendant agreed to purchase 500,000 packs of

1  stolen Marlboro cigarettes.  Id.  The government borrowed the

2  cigarettes for the transaction from Philip Morris, and the cigarettes

3  were shipped from Virginia to Illinois.  Id.  Once the cigarettes

4  arrived in Illinois, the ATF took possession of the cigarettes and

5  placed them into storage until the ATF could arrange the illegal sale

6  to the defendant.  Id.  The bill of lading listed Philip Morris as the

7  consignor and the ATF as the consignee.  Id.  The Seventh Circuit

8  rejected the argument that the cigarettes had lost their interstate

9  character once the ATF took possession of the cigarettes:

10      The district court found that because Skoczen himself was to be

11      the final recipient of the cigarettes, the shipment was merely in

12      storage for a period of time until the cigarettes could be

13      delivered.  A shipment can stay in storage for a period of time

14      without breaking its interstate character.  Here, the Customs

15      Service brought the cigarettes to Illinois from Virginia in order

16      to pass them on to Skoczen.  Until that delivery had occurred, the

17      shipment was not complete.  Although the Customs Service is listed

18      as consignor on the bill of lading, that is just one factor to

19      take into account.  Congress intended § 659 to protect interstate

20      commerce.  To give effect to that purpose, we must take a more

21      pragmatic view of what it means to be in shipment and to whom and

22      where the goods are to be delivered.  As a practical matter, the

23      *intention* was always to deliver the cigarettes to Skoczen.  We

24      find that the shipment was still in progress until Skoczen was

25      ready to take delivery and therefore that this element of the

26      statute was satisfied.

27  Id. at 544-45 (emphasis added and citations omitted).

28

4

1    Applying this reasoning here, whether the shipment of meat
2  products was still in interstate commerce when it was stolen en route
3  from the ABC Markets warehouse to the ABC store will turn on the intent
4  of the parties.  As Skoczen makes clear, the bill of lading and other
5  shipping documents, while important, are only factors to be considered;
6  the true question is what the parties intended the final destination to
7  be.

8    Other cases have similarly focused on the intent of the parties
9  for determining a shipment's final destination.  See United States v.
10  Crum, 663 F.2d 771, 772 (8th Cir. 1981) (finding that the oil had not
11  reached its final destination when it reached a storage tank because
12  "it was intended by all parties that the oil would not come to rest
13  until it was transported from" storage facilities in Nebraska to the
14  buyer's facilities in Iowa); United States v. Williams, 559 F.2d 1243,
15  1248 (4th Cir. 1977) (finding that the gasoline stolen from a storage
16  tank in North Carolina after being shipped from Texas was still in
17  interstate commerce because the gasoline "was transported for resale to
18  various distributors," and the 24-hour stopover in the storage tank was
19  "necessary to effect delivery to those for whom it was destined").  In
20  fact, in Garber, the Third Circuit found that the intent of the parties
21  was dispositive of the issue:

22    [W]e are persuaded that, in the circumstances of this case,
23    Cerro's active pursuit of alternative purchasers demonstrates
24    Cerro's intent to resume the shipment as soon as possible.  This
25    intent is dispositive and supports the conclusion that, at the
26    time of the theft, the shipment of copper cathodes had not reached
27    its final destination and had not lost it foreign character.
28  626 F.2d at 1152.

5

Furthermore, in the context of a similar statute, 18 U.S.C. § 2315, the Ninth Circuit has expressly held that "[o]nce an interstate journey has begun, the question of whether it has come to an end is generally one of fact for the jury." Corey v. United States, 305 F.2d 232, 236 (9th Cir. 1962). Indeed, other courts have noted that § 659 and § 2315 have "similar jurisdictional provisions." See Garber, 626 F.2d at 1150.

Thus, whether the shipment of Farmer John meat products had reached its final destination before it was stolen, and Manuel Torres thereafter received it, will turn on the intent of the parties, which is a question for the jury. There is certain information, such as the bill of lading and other shipping documents, which should be helpful in determining what the parties intended as the shipment's final destination. However, the shipping documents alone are not dispositive. Rather, the crucial inquiry is what the parties intended the final destination to be. Thus, the jury will have to consider the applicable shipping documents, along with the testimony of the witnesses, in order to determine whether the meat products had reached their final destination either at the Farmer John packaging facility in Vernon, California, or the ABC Markets warehouse, and had therefore lost their interstate character before they were stolen.

The defense has also raised the issue that Manuel Torres was convicted of receiving stolen fruits and vegetables, not meat products as the Government now contends, in an earlier state court action. However, the Government proffers that a witness will testify, from personal knowledge, that Manuel Torres unloaded stolen meat products from the ABC Markets truck. Thus, whether Manuel Torres possessed the stolen meat products also is a question of fact for the jury.

B.  **Double Jeopardy**

Defendant Manuel Torres also argues that the predicate act based on a violation of 18 U.S.C. § 659 should be stricken because Manuel Torres already pled guilty in state court to an offense based on the same underlying conduct.  The statute provides: "A judgment of conviction or acquittal on the merits under the laws of any state shall be a bar to any prosecution under this section for the same act or acts." 18 U.S.C. § 659.  However, Manuel Torres is not being prosecuted under 18 U.S.C. § 659; he is being prosecuted under the federal RICO laws, where § 659 is a specifically enumerated predicate act.  See 18 U.S.C. § 1961(1)(B).

Courts have held that an act may be alleged as part of a RICO violation notwithstanding the fact that the defendant was previously prosecuted in state court.  See, e.g., United States v. Pungitore, 910 F.2d 1084,  (3d Cir. 1990) ("The dual sovereignty doctrine has been interpreted by this court and others to mean that an acquittal in state court does not preclude the government from charging the offense subject to the acquittal as a predicate act in a subsequent RICO prosecution."); United States v. Frumento, 563 F.2d 1083, 1087 (3d Cir. 1977); United States v. Malatesta, 583 F.2d 748, 757 (5th Cir. 1978); United States v. Licavoli, 725 F.2d 1040, 1047 (6th Cir. 1984).  These cases rest on the doctrine of "dual sovereignty," which states that "where both sovereigns legitimately claim a strong interest in penalizing the same behavior, they have concurrent jurisdiction to vindicate those interest and neither need yield to the other." Pungitore, 910 F.2d at 1105.  "[A] single act that violates the laws of two sovereigns constitutes two separate crimes.  As a result,

7

successive prosecutions by multiple sovereigns for that single act do not violate the Double Jeopardy Clause." United States v. Enas, 255 F.3d 662, 666 (9th Cir. 2001) (citing Heath v. Alabama, 474 U.S. 82, 88 (1985)).

Here, when Manuel Torres took receipt of the stolen goods from the ABC Markets truck, he violated state law, and may have also committed a predicate act that is punishable under the federal RICO laws.  As a result, the fact that Manuel Torres pled guilty in state court does not preclude his prosecution in this case.

**III.   CONCLUSION**

In sum, Defendant Manuel Torres's Motion to Dismiss and Strike the predicate act based on violation of 18 U.S.C. § 659 is DENIED.

IT IS SO ORDERED.

DATED:_____February 19, 2009_____

_____
STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE